UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS

| | |
|---|---|
| **ROADWAY RETAIL LLC,** ) | |
| ) | |
| Plaintiff, ) | Case No. 25-cv-494-AM |
| ) | |
| v. ) | Judge: Chief Judge Alia Moses |
| ) | |
| **The Partnerships and** ) | |
| **Unincorporated Associations** ) | |
| **Identified on Schedule A**, ) | |
| ) | |
| Defendants. ) | |

**MOTION FOR PRELIMINARY INJUNCTION**

Plaintiff Roadway Retail LLC ("Roadway" or "Plaintiff") respectfully moves the Court to convert the TRO granted 10/30/2025 (Dkt. No. 8) to a preliminary injunction under Rule 65 until final resolution of this case. This Motion only applies to Defendants that have not been dismissed.

The Court has already scheduled a Preliminary Injunction hearing for 11/13/2025, which is the day the TRO is set to expire. If the Court is unable to rule on this Motion before 11/13/2025, Plaintiff respectfully requests that the Court extend the TRO to and including the date upon which the Court adjudicates this Motion for Preliminary Injunction. Rule 65(b)(2) allows for an initial 14-day extension (to 11/27/2025). "The continuation of a TRO without the consent of the parties beyond that [twenty-eight] day maximum in Fed. R. Civ. P. 65 has the same practical effect as a preliminary injunction and may be treated as a preliminary injunction." *Jones v. Belhaven College*, 98 Fed.Appx. 284, 284 (5th Cir. 2004) (citing *Sampson v. Murray*, 415 U.S. 61, 86-88 (1974)).

Plaintiff served all remaining Defendants on 11/7/2025. *See* (Dkt. No. 14). It is unknown as to whether any defendant will appear.

1

# I. STATEMENT OF FACTS

## I.A. Introduction

1. As alleged in Plaintiff's Verified Complaint, Defendants have offered for sale and sold unauthorized and unlicensed illuminating mirrors configured to be mounted to car visors identified in Schedule A to the Verified Complaint that infringe Plaintiff's United States Patent No. 9,198,261 ("the Infringing Products") through various fully interactive, commercial Internet stores operating under at least the Online Marketplace Accounts identified in Schedule A to the Verified Complaint (collectively, the "Defendant Internet Stores"). *See* (Dkt. No. 1) at ¶¶ 2-3, Schedule A, Schedule A-1, Schedule A-2.

2. Defendants are reaching out to do business with Texas residents by operating one or more commercial, interactive Defendant Internet Stores through which Texas residents can purchase Infringing Products, as shown in Schedule A-2 to the Verified Complaint. *See* (Dkt. No. 1) at ¶ 18, Schedule A-2. Defendants have targeted sales to Texas residents by offering to ship to Texas, accepting payment in U.S. dollars, and selling products covered by Plaintiff's patent to residents of Texas. *See* (Dkt. No. 1) at ¶ 2. The Defendant Internet Stores share unique identifiers, such as using the same descriptions and offering for sale the same Infringing Products, infringement is happening at the same time with overlap of the products' manufacture, this case involves a claim for lost profits, and the Defendant e-commerce stores share advertising look and feel. *See* (Dkt. No. 1) at ¶ 7. Although Defendants attempt to avoid liability by going to great lengths to conceal both their identities and the full scope and interworking of their operation, *see* (Dkt. No. 1) at ¶ 19, this collectively establishes a logical relationship between Defendants.

3. Further, Defendants attempt to avoid liability by going to great lengths to conceal both their identities and the full scope and interworking of their operation. *See* (Dkt. No. 1) at ¶ 19.

### I.B. Plaintiff's Patent

4. Plaintiff Roadway Retail is a Delaware limited liability company having a principal place of business at 400 Rella Blvd, #156, Montebello, NY 10901. *See* [1] at ¶ 8.

5. Roadway is the exclusive licensee of U.S. Pat. No. 9,198,261 titled "Illuminating Device," ("the '261 Patent"), and Roadway has full and sole control over any enforcement and exploitation of the '261 Patent. *See* (Dkt. No. 1) at ¶ 13.

6. The '261 Patent was duly and legally issued November 24, 2015. *See* (Dkt. No. 1) at ¶ 11. Attached as Exhibit 1 to the Verified Complaint is a true and accurate copy of the '261 Patent. *See* (Dkt. No. 1) at ¶ 11, Exh. 1.

7. Roadway has been engaged in the business of designing, sourcing, and marketing consumer electronics including, but not limited to, portable mirrors incorporating the illumination device shown and claimed in the '261 Patent ("Roadway Products"). *See* (Dkt. No. 1) at ¶ 9. Roadway Products can be purchased from www.glowglassmirrors.com. *See* (Dkt. No. 1) at ¶ 9, 14. Since at least as early as June 2024, Roadway, on its own and/or via retailers, resellers, and/or importers, has marketed, advertised, promoted, imported, and/or sold Roadway Products to consumers in the United States. *See* (Dkt. No. 1) at ¶ 9, 14.

8. Roadway Products are loved by customers at least because of the unique illumination device configuration claimed in the '261 Patent. *See* (Dkt. No. 1) at ¶ 10.

9. At all times relevant, Plaintiff has complied with the federal patent marking statute, 35 U.S.C. § 287(a). *See* (Dkt. No. 1) at ¶ 15.

### I.C. Defendants' Unlawful Activities

10. Defendants are an interrelated group of infringers working in active concert to knowingly and willfully make, use, offer for sale, sell, and/or import into the United States for subsequent sale or use products that infringe directly and/or indirectly at least claim 19 of the '261 Patent. *See* (Dkt. No. 1) at ¶¶ 28-29. They are individuals and business entities who, upon information and belief, reside in China. *See* (Dkt. No. 1) at ¶ 16, Schedule A. The Infringing

Products, whose URL links are shown in Schedule A to the Verified Complaint, infringe at least claim 19 of the '261 Patent, as shown in the 230 pages of claim charts filed in the Verified Complaint as Schedule A-1. *See* (Dkt. No. 1) at ¶¶ 2, 6, 24, 29, 30, Schedule A, Schedule A-1.

11. Defendants go to great lengths to conceal their identities and often use multiple fictitious names and addresses to register and operate their network of Defendant Internet Stores. *See* (Dkt. No. 1) at ¶ 19. On information and belief, Defendants regularly create new online marketplace accounts on various platforms using the identities listed in Schedule A, as well as other unknown fictitious names and addresses. *See id.* Infringers such as Defendants typically operate multiple credit card merchant accounts and PayPal accounts behind layers of payment gateways so that they can continue operation in spite of enforcement efforts. *See* (Dkt. No. 1) at ¶ 23. On information and belief, Defendants maintain offshore bank accounts and regularly move funds from their PayPal accounts or other financial accounts to offshore bank accounts outside the jurisdiction of this Court. *See id.*

12. Defendants' infringement of the '261 Patent in connection with the offering to sell, selling, and/or importing of the Infringing Products, including the offering for sale and sale of the Infringing Products into Texas, is irreparably harming Plaintiff, including through price erosion and reputational damage. *See* (Dkt. No. 1) at ¶¶ 9, 10, 26, 31, 32.

13. Plaintiff's Verified Complaint seeks, among other relief, an injunction and that Defendants account for and pay to Plaintiff due to Defendants' unlawful acts. *See* (Dkt. No. 1) at ¶¶ 32-35.

## II. LEGAL STANDARDS

Motions for preliminary injunctions are evaluated under the same standard as temporary restraining orders. *Clark v. Prichard*, 812 F.2d 991 (5th Cir. 1987). The substantive law of the Federal Circuit governs the issuance of a preliminary injunction in patent cases. *Hybritech Inc. v. Abbott Laboratories*, 849 F.2d 1446, 1451 n.12 (Fed. Cir. 1988). The decision to grant or deny

injunctive relief is an act of equitable discretion by the district court. *eBay Inc. v. MercExchange, LLC,* 554 U.S. 388, 391 (2006).

A party seeking to obtain a preliminary injunction must demonstrate: "(1) it is likely to succeed on the merits; (2) it is likely to suffer irreparable harm without preliminary relief; (3) the balance of equities tips in its favor; and (4) an injunction is in the public interest." *Winter v. NRDC, Inc.*, 555 U.S. 7, 20 (2008).

### III. ARGUMENT

Defendants' purposeful, intentional, and unlawful conduct is causing and will continue to cause irreparable harm to Plaintiff. The entry of a preliminary injunction is appropriate because it would extend the TRO and prevent Defendants from benefiting from their wrongful use of Plaintiff's patent.

In the absence of a preliminary injunction, Defendants can and likely will move any assets to offshore bank accounts outside the jurisdiction of this Court – as this Court has already found. *See* Statement of Fact (SOF) 10; (Dkt. No. 8) at p. 4. Further, Defendants' continued sales of Infringing Products will result in Plaintiff suffering irreparable harm from the loss of its lawful patent rights to exclude others from making, using, selling, offering for sale, and importing the patented invention. *See* SOF 11.

#### III.A Jurisdiction and venue are proper

This Court has original subject matter jurisdiction over the claims in this action pursuant to the provisions of the Patent Act, 35 U.S.C. § 1, *et seq.*, 28 U.S.C. §§ 1338(a)-(b), and 28 U.S.C. § 1331. *See* SOF 1, 4, 5, 9. Venue is proper pursuant to 28 U.S.C. § 1391. *See* SOF 2, 9.

To establish personal jurisdiction over a defendant, a plaintiff must satisfy both the state long-arm statute and constitutional due process. *Bullion v. Gillespie,* 895 F.2d 213 (5th Cir.1990). Because the Texas long-arm statute "confers jurisdiction to the limits of due process under the Constitution", the issue is narrowed to whether exercising personal jurisdiction over the defendant

would violate due process. *Command-Aire Corp. v. Ont. Mech. Sales and Serv. Inc.*, 963 F.2d 90, 93 (5th Cir. 1992). The plaintiff bears the burden of making only a prima facie showing of personal jurisdiction in the early stages of litigation. *Walk Haydel & Assocs., Inc. v. Coastal Power Prod. Co.*, 517 F.3d 235, 241 (5th Cir. 2008). "For the court to exercise specific jurisdiction, the court must determine '(1) whether the defendant has . . . purposely directed its activities toward the forum state or purposely availed itself of the privileges of conducting activities there; (2) whether the plaintiff's cause of action arises out of or results from the defendant's forum-related contacts; and (3) whether the exercise of personal jurisdiction is fair and reasonable.'" *Nuovo Pignone, SpA v. STORMAN ASIA M/V*, 310 F.3d 374, 378 (5th Cir. 2002) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985)).

Whether a defendant "purposefully directed" activities at a forum's residents turns on whether there is "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Id*, at 379. When specific jurisdiction over a defendant is based on online interactions via an Internet website, the Fifth Circuit follows the sliding scale adopted in *Zippo Manufacturing Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119, 1124 (W.D. Pa. 1997). *Mink v. AAAA Dev. LLC*, 190 F.3d 333, 336 (5th Cir. 1999). The *Zippo* sliding scale comprises a spectrum of website interactivity where one end of the spectrum comprises passive websites that do "nothing more than advertise on the Internet," which, therefore, are insufficient to establish personal jurisdiction. *Id.* On the other end of the spectrum are fully interactive websites through which "a defendant clearly does business over the Internet by entering into contracts with residents of other states [and] which 'involve the knowing and repeated transmission of computer files over the Internet….'" *Id.* (citing *Zippo*, 952 F. Supp. at 1124). In the latter situation, personal jurisdiction is proper. *Id.*

Here, Defendants operate fully interactive e-commerce stores that invite users from Texas to purchase the Infringing Products. *See* SOF 1, 2. Further, these e-commerce stores accept payment in U.S. dollars and funds coming from U.S.-based accounts, and they each invite orders from Texas and indicate that they will ship the Infringing Products into Texas to fill such orders.

*See* SOF 2. Defendants have thus purposefully directed their activities at the State of Texas, and Plaintiff has been harmed as a direct result of these activities. *See* SOF 6-8, 11. Moreover, because Defendants have purposefully availed themselves of the benefits of doing business in Texas, it does not offend the notions of fair play and substantial justice to haul them into this Court.

Because Defendants have purposefully availed themselves of the benefits of doing business in Texas and have manifested their intent to do so; have directed their activities at Texas by maintaining online webstores structured such that they invite orders from Texas and have the capacity to fill such orders; have, on information and belief, sold and shipped Infringing Products to Texas residents within the State; and because hauling Defendants into this Court does not offend traditional notions of fair play and substantial justice; the Court may exercise specific personal jurisdiction over Defendants.

### III.B. A preliminary injunction is available and warranted

#### III.B.i. There is a substantial likelihood that Plaintiff will succeed on the merits

Roadway is likely to succeed on the merits of its patent infringement claim. To establish a likelihood of success on the merits of its patent infringement claim, Roadway "must show that it will likely prove infringement, and that it will likely withstand challenges, if any, to the validity of the patent." *Titan Tire Corp. v. Case New Holland, Inc.*, 566 F.3d 1372, 1376 (Fed. Cir. 2009). Roadway satisfies these requirements.

A defendant is liable for patent infringement if it, "without authority makes, uses, offers to sell, or sells any patented invention, within the United States or imports into the United States and patent invention during the term of the patent thereof." 35 U.S.C. § 271(a). "A determination of infringement is a two-step process. The court must (1) construe the asserted claims and then (2) compare the properly construed claims to the allegedly infringing devices." *Pause Tech. LLC v. TiVo Inc.*, 419 F.3d 1326, 1335 (Fed. Cir. 2005) (citations omitted). In comparing utility patent claims to an accused product, a patent owner must prove that "the accused device contains each

limitation of the asserted claim, or an equivalent of each limitation." *Bowers v. Baystate Techs., Inc.*, 320 F.3d 1317, 1334 (Fed. Cir. 2003) (citations omitted).

First, all terms in the claims of the '261 Patent should be construed according to the definitions provided by the applicant in the specification, or if not explicitly defined, according to their ordinary meanings as understood by a person of ordinary skill in the art. *See Phillips v. AWH Corp.*, 415 F.3d 1303, 1313 (Fed. Cir. 2005). Roadway respectfully asserts that the ordinary meaning of the terms should be used here.

Second, under the ordinary meaning of the claim language, Defendants' accused products literally infringe at least claim 19 of the '261 Patent. **Infringement of each accused product is demonstrated in the 230 pages of claim charts filed in the Verified Complaint (Dkt. No. 1) as Schedule A-1.** *See* SOF 9. Each accused product meets each claim limitation as addressed therein.

Third, Plaintiff has not licensed or authorized Defendants to use the '261 Patent, and none of Defendants are authorized retailers of licensed products. *See* SOF 1. Accordingly, Roadway is likely to succeed on the merits of its claim that Defendants infringe the '261 Patent.

An issued United States patent is given a statutory presumption of validity. See 35 U.S.C. § 282; *Am. Hoist & Derrick Co. v. Sowa & Sons, Inc.*, 725 F.2d 1350, 1359 (Fed. Cir. 1984). Invalidity is generally proven by demonstrating that the patented invention is either anticipated or rendered legally obvious by the prior art. *See* 35 U.S.C. §§ 102-103. Roadway is not aware of any evidence that would tend to anticipate or render obvious the claims of the '261 Patent. Further, various secondary considerations support the non-obviousness of the '261 Patent. *See* SOF 7; *Wyers v. Master Lock Co.*, 616 F.3d 1231, 1245 (Fed. Cir. 2010) (discussing "secondary indicia of nonobviousness" such as commercial success and copying). The patented product has enjoyed significant commercial success, which provides secondary considerations suggesting that the '261

Patent is not obvious. *See, e.g., Spectralytics, Inc. v. Cordis Corp.*, 649 F.3d 1336, 1344 (Fed. Cir. 2011).

Therefore, Roadway will likely be able to prove that the Accused Products infringe the '261 Patent, and Defendants will not be able to prove that the '261 Patent is invalid. Accordingly, Roadway is likely to succeed on its patent infringement claims.

### III.B.ii. Plaintiff will suffer irreparable injury without a preliminary injunction

A party seeking a preliminary injunction must establish that it "is likely to suffer irreparable harm in the absence of preliminary relief." *Winter v. NRDC, Inc.*, 555 U.S. 7, 20 (2008). "Where the injury cannot be quantified, no amount of money damages is calculable, and therefore the harm cannot be adequately compensated and is irreparable." *Metalcraft of Mayville, Inc. v. Toro Co.*, 848 F.3d 1358, 1368 (Fed. Cir. 2017) (citing *Apple Inc. v. Samsung Elecs. Co.*, 735 F.3d 1352, 1360 (Fed. Cir. 2013)). "[T]he Federal Circuit has repeatedly held that '[d]irect competition in the same market is certainly one factor suggesting strongly the potential for irreparable harm without enforcement of the right to exclude." *Tinnus Enters., LLC v. Telebrands Corp.*, 2016 U.S. Dist. LEXIS 181095, at *37 (E.D. Tex. July 12, 2016) (quoting *Broadcom Corp. v. Qualcomm Inc.*, 543 F.3d 683, 703 (Fed. Cir. 2008); *see also Douglas Dynamics v. Buyers Prods. Co.*, 717 F.3d 1336, 1345 (Fed. Circ. 2013) ("[w]here two companies are in competition against one another, the patentee suffers the harm—often irreparable—of being forced to compete against products that incorporate and infringe its own patented inventions.").

In the present case, Plaintiff faces a group of infringers offering products that infringe Plaintiff's '261 Patent. In addition to Plaintiff's past and ongoing lost sales as a direct result of Defendants' infringement, Defendants have and continue to threaten damage Plaintiff's goodwill within the marketplace, erode prices, damage Plaintiff's reputation, and cause Plaintiff to lose business opportunities. Defendants' Infringing Products occupy the exact same market niche as Plaintiff's products and do so without having needed to make the initial capital investment Plaintiff made when obtaining its exclusive license of the '261 Patent. As such, Defendants are able to

undercut Plaintiff's prices and force Plaintiff to lower its prices to stay competitive in the market, thereby leading to price erosion. Plaintiff is further unable to control Defendants' conduct and the quality of the goods they produce, meaning Defendants are able to produce and sell infringing goods of subpar quality at the expense of Plaintiff's patent rights. The presence of infringing goods in the marketplace further causes irreparable harm to Plaintiff by undermining its bargaining position when it comes to business opportunities. If Plaintiff is unable to enforce its duly granted rights in the '261 Patent, those rights become effectively worthless to potential distributors and licensees, and Plaintiff loses business opportunities as a result.

Moreover, courts have recognized that irreparable harm exists where, as here, the accused infringer is not likely to pay a damages award. *See Robert Bosch LLC v. Pylon Mfg. Corp.*, 659 F.3d 1142, 1156 (citing *Canon, Inc. v. GCC Int'l Ltd.*, 263 Fed. Appx. 57, 62 (Fed. Cir. Jan. 25, 208)); *Tinnus Enters., LLC v. Telebrands Corp.*, No. 16-cv-33, 2016 WL 7587339, at *3 (E.D. Tex. July 12, 2016) (citations omitted), *report and recommendation adopted*, 2016 WL 9045962 (Sept. 29, 2016), *aff'd*, 708 F. Appx 1019 (Fed. Cir. 2018).

For at least the foregoing reasons, Defendants' activities have and will continue to cause Plaintiff irreparable harm unless they are restrained. This factor, too, weighs heavily in favor of granting Plaintiff's Motion for Preliminary Injunction.

### III.B.iii. The threatened injury to Plaintiff substantially outweighs any harm the preliminary injunction may cause to Defendants

"The district court must weigh the harm to the moving party if the injunction is not granted against the harm to the non-moving party if the injunction is granted." *Metalcraft of Mayville,* 848 F.3d at 1369 (citing *Hybritech Inc. v. Abbott Labs.*, 849 F.2d 1446, 1457 (Fed. Cir. 1988)). In patent cases, this Court has applied the standard that "the magnitude of the threatened injury to the patent owner is weighed, in light of the strength of the showing of likelihood of success on the merits, against the injury to the accused infringer if the preliminary decision is in error." *Tinnus Enters., LLC*, 2016 U.S. Dist. LEXIS 181095, at *11 (citing *H.H. Robertson Co. v. United Steel Deck, Inc.*, 820 F.2d 384, 390 (Fed. Cir. 1987).

Here, Plaintiff has made a strong showing that it will likely be successful on the merits. *See* Section III.B.i., *supra*. Plaintiff has further shown in Section III.B.ii., *supra*, that it will suffer substantial, irreparable harm if Defendants are allowed to continue their infringing activities unrestrained. Defendants, by contrast, are a swarm of foreign e-commerce retailers who have no investment whatsoever in the intellectual property at issue in this case and stand to lose very little should their restraint be found to have been made in error.

Because Plaintiff has made a strong showing of both its likelihood of success on the merits and that it will suffer substantial, irreparable harm in the absence of an order restraining Defendants' infringing activities, and because Defendants stand to lose very little should that restraint be found to have been made in error, this factor falls in favor of granting Plaintiff's Motion for Preliminary Injunction.

### III.B.iv. The requested preliminary injunction is not against public policy

The public interest favors the maintenance of a well-functioning patent system. *Medtronic, Inc. v. Mirowski Family Ventures, LLC*, 571 U.S. 191, 203 (2014). The Federal Circuit has "long acknowledged the importance of the patent system in encouraging innovation." *Sanofi-Synthelabo v. Apotex, Inc.*, 470 F.3d 1368, 1383 (Fed. Cir. 2006). "[E]ncouragement of investment-based risk is the fundamental purpose of the patent grant, and is based directly on the right to exclude." *Patlex Corp. v. Mossinghoff*, 758 F.2d 594, 599 (Fed. Cir. 1985). The Federal Circuit has further recognized that "[a]lthough the public interest inquiry is not necessarily or always bound to the likelihood of success o[n] the merits, ... absent any other relevant concerns ... the public is best served by enforcing patents that are likely valid and infringed." *Abbot Labs. v. Andrx Pharms., Inc.*, 452 F.3d 1331, 1348 (Fed. Cir. 2006).

Here, the Plaintiff's case is strong. The '261 Patent is valid and, as demonstrated in the 230 pages of claim charts in Schedule A-1 to the Verified Complaint (Dkt. No. 1), has clearly been infringed. Plaintiff has a high likelihood of success on the merits; and, while such a likelihood of success is not always bound to the public interest inquiry, it clearly is here. Enforcement of the

Patent clearly aligns with the purposes of the patent system as recognized by the Federal Circuit and the Supreme Court. In contrast, Defendants' Infringing Products only serve to harm the public by flooding the market with a deluge of counterfeit products, the quality of which can never be guaranteed. Defendants have no investment in the intellectual property at issue and they are thus free to wrongfully exploit it until it is devoid of any value whatsoever, at which point they will likely find another property to exploit and destroy unless they are held accountable. As such, the public interest factor tips decidedly in favor of granting Plaintiff's Motion for Preliminary Injunction.

## IV. THE EQUITABLE RELIEF SOUGHT IS APPROPRIATE

The Patent Act authorizes courts to issue injunctive relief "in accordance with the principles of equity to prevent the violation of any right secured by patent, on such terms as the court deems reasonable." 35 U.S.C. § 283.

### IV.A. A preliminary injunction immediately enjoining Defendants' unauthorized and unlawful use of the '261 Patent is appropriate

Plaintiff requests a preliminary injunction requiring Defendants to immediately cease making, using, offering for sale, selling, and importing the Infringing Products set forth in Schedule A to the Verified Complaint (Dkt. No. 1) and any other products not authorized by Plaintiff that infringe the '261 Patent. Such relief is necessary to stop the ongoing harm to Plaintiff's control over its rights in the '261 Patent, its reputation, and associated goodwill, as well as harm to consumers, and to prevent Defendants from continuing to benefit from their unauthorized use of Plaintiff's intellectual property. The need for *ex parte* relief is magnified in today's global economy where infringers can operate anonymously over the Internet. Many courts have authorized immediate injunctive relief in similar cases involving the sale of infringing products. *See, e.g., Nike, Inc. v. Fujian Bestwinn Industry Co.*, 166 F.Supp. 3d 1177, 1178-79 (D. Nev. 2016).

### IV.B. Preventing the fraudulent transfer of assets is appropriate

Plaintiff requests continued restraint of Defendants' assets so that Plaintiff's right to recovery from Defendants' infringement is not impaired. Issuing a continued restraint will ensure Defendants' compliance. If such a continued restraint is not granted in this case, Defendants may disregard their responsibilities and fraudulently transfer financial assets to overseas accounts before a final judgment in this case. Specifically, upon information and belief, Defendants in this case hold most of their assets in offshore accounts, making it easy to hide or dispose of assets, which will render an accounting by Plaintiff meaningless. *See* SOF 10.

Courts have the inherent authority to issue a prejudgment asset restraint when a plaintiff's complaint seeks relief in equity. *Animale Grp. Inc. v. Sunny's Perfume Inc.*, 256 F. App'x 707, 709 (5th Cir. 2007). In addition, Plaintiff has shown a strong likelihood of succeeding on the merits of its patent infringement claims. Plaintiff's Verified Complaint seeks, among other relief, an injunction and that Defendants account for and pay to Plaintiff due to Defendants' unlawful acts. *See* SOF 12. Therefore, this Court has the inherent equitable authority to grant Plaintiff's request for a prejudgment asset freeze to preserve relief sought by Plaintiff.

Plaintiff has shown a likelihood of success on the merits, immediate and irreparable harm suffered as a result of Defendants' activities, and that, unless Defendants' assets remain frozen, Defendants will likely hide or move their ill-gotten funds to off-shore bank accounts and fund additional infringement. Accordingly, an asset restraint is proper.

### V. BOND

Federal Rule of Civil Procedure 65(c) provides that the Court may enter a preliminary injunction only where the movant puts up security adequate to compensate the party to be restrained should their restraint later be found to be wrongful. *See* Fed. R. Civ. P. 65(c). The amount of that security "is a matter for the discretion of the trial court." *Kaepa Inc. v. Achilles Corp.*, 76 F.3d 624, 628 (5th Cir. 1996) (quoting *Corrigan Dispatch Co. v. Casa Guzman, S.A.*, 569 F.2d 300, 303 (5th Cir. 1978)).

In granting the TRO, the Court required a bond of ten thousand dollars ($10,000). Because of the strong and unequivocal nature of Plaintiff's evidence of patent infringement, Plaintiff respectfully requests that the Court not increase the thousand dollar ($10,000) bond already posted.

## VI. CONCLUSION

Due to the strong likelihood of success on the merits of Plaintiff's case and the irreparable harm that would result without a preliminary injunction, Plaintiff respectfully requests that its proposed preliminary injunction order (filed herewith as an exhibit) be granted.

Dated: November 7, 2025

Respectfully Submitted,

/s/ _____
Allen Justin Poplin #21598
**AVEK IP, LLC**
7285 W. 132nd Street, Suite 340
Overland Park, KS 66213
Phone: 913-303-3841
jpoplin@avekip.com
*Attorney for Plaintiff*