## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## DEL RIO DIVISION

Roadway Retail LLC,

                    Plaintiff,

    vs.

THE PARTNERSHIPS and
UNINCORPORATED ASSOCIATIONS
IDENTIFIED ON SCHEDULE A,

                    Defendants.

Case No. 6:25-cv-494-AM

---

### DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

Defendants Huicocy (#8), xiangzhouwang (#9), PERFACE (#12), ZJNUO Direct (#16), SmileLED (#22), Manbala (#39), pretty-angle (#41), LiPang (#44), and keebapoo (#45) respectfully submit this Opposition to Plaintiff's Motion for Preliminary Injunction. In support thereof, Defendants state as follows:

### I. INTRODUCTION

Plaintiff seeks the extraordinary remedy of a preliminary injunction and broad asset restraints against dozens of online sellers, including these nine small Amazon storefronts based on an assertion, unsupported by any meaningful technical evidence in the present record, that their car sun visor mirrors infringe claim 19 of U.S. Patent No. 9,198,261 ("the '261 patent").

Plaintiff has not presented any materials indicating that it purchased, tested, or disassembled any of the accused products, nor has it submitted any technical documentation showing that the accused mirrors contain the control-unit, sensor-unit, motion-detection, or dimmer features recited in claim 19. Instead, Plaintiff relies

primarily on product listing photographs and infers internal functionality that the current record does not substantiate.

By contrast, the evidence before the Court includes sworn declarations from each Defendant, submitted as Exhibit A, confirming that the accused mirrors fall into three configurations and are simple, manually operated, touch-controlled devices. Across all configurations, the mirrors turn on, turn off, or change lighting only when the user physically touches the capacitive control area; none of the products detects motion, none responds automatically when the sun visor is opened or closed, and none contains a motion sensor or proximity sensor.

On this record, Plaintiff has not demonstrated a likelihood of success on the merits or shown irreparable harm that cannot be remedied through monetary damages, while Defendants' Amazon accounts remain frozen and their small businesses face significant operational hardship. Because Plaintiff has not met the requirements for preliminary injunctive relief, the motion should be denied.

## II. BACKGROUND

Plaintiff filed this Schedule A patent infringement action on October 22, 2025, alleging that dozens of online merchants, including these nine Defendants, sell car sun visor mirrors that infringe claim 19 of the '261 patent. On October 30, 2025, the Court entered an *ex parte* temporary restraining order ("TRO"), which imposed asset restraints and authorized alternative service. Plaintiff now seeks to convert the TRO into a preliminary injunction.

The nine opposing Defendants are small Amazon storefronts based in China who resell affordable visor mirrors sourced from third-party suppliers. As reflected in the sworn declarations submitted by each Defendant, the accused products fall into three supplier-based configurations, all of which are manually operated, touch-controlled

devices. In some configurations, the mirror will turn off automatically after a fixed period of inactivity, but this is a simple timed shut-off and does not involve any dimmer, control-unit regulation, or reduction of power down to zero as described in claim 19. Across all configurations, the mirrors turn on, turn off, or change lighting only when the user physically touches the capacitive control area. They do not detect motion, do not respond to the opening or closing of the sun visor, and do not contain any motion sensor, proximity sensor, or the dimmer architecture required by claim 19.

### III. LEGAL STANDARD

A preliminary injunction is "an extraordinary remedy never awarded as of right," and may issue only upon a clear showing that the movant is entitled to such relief. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7 (2008). Under Winter, a plaintiff must establish (1) a likelihood of success on the merits, (2) a likelihood of suffering irreparable harm in the absence of preliminary relief, (3) that the balance of equities tips in the plaintiff's favor, and (4) that an injunction is in the public interest. *Id. at 20*.

The Fifth Circuit applies a substantially similar four-factor test, requiring the movant to clearly carry the burden of persuasion on all four elements. See *Canal Auth. of State of Fla. v. Callaway*, 489 F.2d 567, 572 (5th Cir. 1974); *Texas v. United States*, 201 F. Supp. 3d 810 (N.D. Tex. 2016). Courts within the Fifth Circuit have recognized that the first two factors, likelihood of success on the merits and irreparable harm, are often the most critical in the analysis. See *Career Colleges and Schools of Texas v. United States Department of Education*, 98 F.4th 220 (5th Cir. 2024). But the movant must ultimately satisfy all four requirements before the extraordinary remedy of a preliminary injunction may be granted.

### IV. ARGUMENT

**A. Plaintiff Has Not Shown a Likelihood of Success on the Merits**

Under Federal Circuit law, the determination of patent infringement involves a two-step analysis. First, the Court construes the asserted claims as a matter of law, defining their meaning and scope. *Markman v. Westview Instruments, Inc.*, 517 U.S. 370 (1996); *Cybor Corp. v. FAS Techs., Inc.*, 138 F.3d 1448 (Fed. Cir. 1998). Second, the properly construed claims are compared to the accused products to determine whether every claim limitation is present in the accused device, either literally or under the doctrine of equivalents. *Amazon.com, Inc. v. Barnesandnoble.com*, Inc., 239 F.3d 1343 (Fed. Cir. 2001); *Abbott Labs. v. Sandoz, Inc.*, 544 F.3d 1341 (Fed. Cir. 2008).

Infringement, whether literal or by equivalents, is a question of fact, and the patentee bears the burden of proving infringement by a preponderance of the evidence. *AquaTex Indus., Inc. v. Techniche Solutions*, 479 F.3d 1320 (Fed. Cir. 2007). To meet this burden, the patentee must establish that the accused product contains each and every limitation of at least one asserted claim; if even a single limitation is absent, there is no infringement as a matter of law. *Amazon.com*, 239 F.3d 1343; *Warner-Jenkinson Co. v. Hilton Davis Chem. Co*., 520 U.S. 17 (1997).

At the preliminary-injunction stage, this means Plaintiff must make a clear showing that it is likely to prove, after claim construction and full fact development, that the accused mirrors practice all limitations of claim 19. Conversely, if Defendants raise a substantial question as to whether any required limitation is present in the accused products, Plaintiff cannot establish a likelihood of success on the merits and preliminary injunctive relief is inappropriate.

1. Claim 19 Recites Multiple Specific Limitations That Plaintiff Must Prove Are Present in the Accused Mirrors

Claim 19 of the '261 patent is not directed to any mirror with LED lights or a generic touch switch; it recites a specific combination of structural and functional limitations that must all be present in an accused device for infringement to occur. As relevant here, claim 19 is directed to "an illumination device that is operable while being transported and that can be placed in an object that can be opened and closed again," '261 patent col. 3, ll. 1–3, and then further requires, "the illumination device comprising" at least the following elements: (1) "at least a first light source"; (2) "an electric energy storage device"; (3) "a switch device that comprises a control unit including a sensor unit with which a first switching unit is transferable from an open switching state into a closed switching state"; and (4) "a dimmer that is actuatable by the control unit and with which power supplied to the first light source can be abruptly or steadily reduced down to zero." '261 patent col. 3, ll. 4–12. The claim then adds two "wherein" clauses that impose additional limitations on how these components must interact: it requires that "the first light source is suppliable with electric power from the electric energy storage device when a first sensor of the sensor unit is touched and/or when said first sensor detects a motion," and further that "the first sensor of the sensor unit includes a capacitive sensor." '261 patent col. 3, ll. 13–18.

Thus, among other things, claim 19 requires

(i) a particular control architecture involving a control unit, sensor unit, and first switching unit;

(ii) a dimmer that is operated by the control unit and that regulates power to the same first light source down to zero, whether abruptly or gradually; and

(iii) a first sensor that not only includes a capacitive sensor but is configured so that the first light source is supplied with power when that sensor is touched and/or

when it detects motion. These are affirmative claim limitations that Plaintiff must prove are present in each accused mirror. They cannot be presumed from the mere presence of LED lights or a touch switch, and the absence of any one of them is sufficient to defeat infringement as to claim 19.

2. Plaintiff Has Not Shown These Limitations Are Present

Plaintiff has not carried its burden to show that the accused mirrors practice all of the limitations of claim 19. As noted above, claim 19 requires, among other things, a specific switch and control architecture, a dimmer that is actuated by the control unit and reduces power to the first light source down to zero, and a first sensor that both includes a capacitive sensor and supplies power to the first light source when touched and/or when it detects motion. Plaintiff, however, has not offered any technical evidence, such as teardown photographs, schematics, test reports, or supplier documentation for these Defendants' products, showing that these features are present. Instead, its motion relies primarily on listing photographs and generalized descriptions, which do not identify a control-unit/sensor-unit architecture, any dimmer in the power path regulated down to zero, or any sensor configured to detect motion.

By contrast, Defendants' sworn declarations and supplier information confirm that the accused mirrors are manually operated, touch-controlled devices that respond only to user touch; in some configurations users may adjust brightness by long press or switch between separate light sources, and in some products the light may turn off automatically after a fixed period as a simple timed shut-off, but none of the products turns on or off in response to visor movement or motion, and none implements the dimmer and motion-sensor limitations of claim 19. At a minimum, these facts create a substantial question as to whether several key limitations of claim 19 are present in any accused mirror, so Plaintiff cannot establish the likelihood of success on the

merits required for preliminary injunctive relief.

3. The Accused Products Fall Into Three Distinct Non-Infringing Configurations

The accused products sold by the nine Opposing Defendants fall into several related configurations of manually operated, touch-controlled mirrors, none of which practices the limitations of claim 19.

First, some Defendants, including ZJNUO Direct and PERFACE, sell mirrors that incorporate two independent capacitive touch switches, one controlling a white LED light source and the other controlling a yellow LED light source. In these models, the two touch points are used only to turn the respective light sources on and off to switch between color temperatures. Zhong (operate of PERFACE) Decl. ¶ 5. There is no brightness adjustment and no dimming function at all. The mirrors respond only to deliberate user touch, do not contain any sensor that detects motion, do not activate or deactivate automatically in response to visor movement, Zuo (operate of ZJNUO Direct) Decl. ¶ 6, and do not employ a dimmer actuated by a control unit to regulate power to a single first light source down to zero as required by claim 19.

Second, Defendants Huicocy, xiangzhouwang, Manbala, pretty-angle, LiPang, and keebapoo sell mirrors that also use two capacitive touch switches but support a manual long-press function that allows the user to increase or decrease brightness while the light is on, and that include a timed auto-off after a period of inactivity. Peng (operate of xiangzhouwang) Decl. ¶ 6. In these products, any change in brightness still occurs only while the user is touching the control areas, and the timed auto-off simply shuts the light off at the end of a preset interval rather than gradually fading power down to zero through a dimmer circuit. These mirrors likewise do not include any motion-detecting sensor, are not triggered by opening or closing the visor,

and do not implement a control-unit-actuated dimmer that steadily or abruptly reduces power to the same light source down to zero. Zheng (operate of Huicocy) Decl. ¶ 6.

Third, Defendant SmileLED sells a mirror that uses a single capacitive touch point to perform on/off control and cycle through preset lighting modes, without any timed auto-off feature. That product changes modes only when the user taps the touch area, and it does not include a dimmer in the power path or any sensor that detects motion. Luo (operate of SmileLED) Decl. ¶ 5. Across all of these configurations, the accused products turn on, turn off, or change modes only when the user physically touches the capacitive control area; none contains a sensor that detects motion of any kind, none automatically switches in response to visor movement, and none includes the claimed dimmer and control-unit arrangement. Because each configuration lacks multiple required limitations of claim 19, Plaintiff cannot demonstrate a likelihood of success on the merits.

4. The Accused Products Do Not Implement a Dimmer That Reduces Power to Zero

Even for those accused products that allow the user to adjust brightness by long-pressing the capacitive touch area, the dimming behavior is fundamentally different from what claim 19 requires. In these products, the brightness can be manually increased or decreased within a certain range only while the user continuously presses the touch control, but the light does not continue to dim down to zero. Instead, if the user wishes to turn the light off, a separate touch command is required to switch the light from whatever brightness level is currently set to the "off" state. The long-press function therefore operates as a user-controlled brightness adjustment, not as a dimmer, actuated by a control unit, "with which power supplied to the first light source can be abruptly or steadily reduced down to zero" as recited in claim 19.

Likewise, in the configurations that include a timed auto-off feature, the light simply shuts off at the end of a preset interval rather than being driven by a dimmer that regulates power down to zero. In all cases, the transition to the off state either requires a separate touch input or occurs as a simple on/off timeout, not through the claimed dimmer architecture that steadily or abruptly reduces power to the first light source down to zero. This mismatch between the claimed dimmer limitation and the actual operation of the accused mirrors creates at least a substantial question as to infringement and independently prevents Plaintiff from establishing a likelihood of success on the merits.

**B. Plaintiff Has Not Demonstrated Irreparable Harm**

Plaintiff has likewise failed to establish the second, and independently essential element of irreparable harm. Plaintiff does not identify any lost customers, cancelled contracts, market share erosion, reputational injury, or other concrete harm that cannot be remedied through monetary damages. Instead, Plaintiff relies primarily on generalized assertions that allegedly infringing marketplace listings "harm competition" or "divert traffic," but such speculative statements, unsupported by admissible evidence, are insufficient to justify the extraordinary remedy of a preliminary injunction. Plaintiff offers no sales data, no evidence of price depression, and no showing that any consumer purchased an accused mirror believing it originated from Plaintiff. Moreover, Plaintiff has not shown that any alleged harm is tied to the specific accused products sold by Opposing Defendants, as opposed to general marketplace conditions or competition from unrelated sellers.

By contrast, the existing TRO has already frozen Defendants' Amazon accounts, which prevents them from receiving payments for legitimate sales, fulfilling orders, or maintaining basic business operations. Without access to their funds or storefronts,

Defendants face the imminent risk of being unable to continue operating at all. Such harms are concrete, immediate, and severe. Because Plaintiff's asserted injuries are speculative and compensable through damages, while Defendants' harms are substantial and ongoing, Plaintiff cannot satisfy the irreparable-harm requirement.

## C. The Balance of Equities and Public Interest Weigh Against Injunctive Relief

The balance of equities requires courts to weigh the competing claims of injury and assess the effect of granting or withholding preliminary relief. See *Yang v. Kellner*, 458 F. Supp. 3d 199 (S.D.N.Y. 2020). Courts apply this standard flexibly and consider which party would suffer the greater hardship. See *APAC Teleservices, Inc. v. McRae*, 985 F. Supp. 852 (N.D. Iowa 1997). The injunction may issue only where the movant shows that its hardship outweighs the harm an injunction would impose on the nonmoving party. See *Republican Party of Pennsylvania v. Cortés*, 218 F. Supp. 3d 396 (E.D. Pa. 2016). These considerations substantially overlap with the public interest, which requires courts to evaluate the broader consequences of emergency relief and to avoid unnecessary disruption where the merits remain uncertain. See *League of United Latin American Citizens v. Executive Office of the President*, 780 F. Supp. 3d 135 (D.D.C. 2025).

Here, Plaintiff identifies no concrete harm that cannot be remedied through monetary damages, whereas Defendants, small Amazon sellers, have already had their accounts and funds restrained under the TRO. Prolonged restraints threaten their ability to operate, pay suppliers, and maintain basic business functions. None of the accused products has been shown to include the dimmer or motion-sensor architecture required by claim 19, and the record raises substantial questions as to infringement. In these circumstances, extending the extraordinary restraints would impose severe and

immediate hardship on Defendants while providing Plaintiff no corresponding benefit that cannot be addressed through damages. The balance of equities and public interest therefore weigh strongly against converting the TRO into a preliminary injunction.

## V. CONCLUSION

For the foregoing reasons, Plaintiff has not carried its burden to show a likelihood of success on the merits, has not demonstrated irreparable harm, and cannot establish that the balance of equities or the public interest favors the extraordinary remedy it seeks. As to Defendants Huicocy, xiangzhouwang, PERFACE, ZJNUO Direct, SmileLED, Manbala, pretty-angle, LiPang, and keebapoo, the record instead reveals substantial questions regarding infringement of claim 19 and significant hardship arising from continued restraints on their small Amazon storefronts.

Plaintiff's Motion for Preliminary Injunction should therefore be denied.


Dated: November 21, 2025        Respectfully Submitted,
By: /s/ Mingbo Ye
Mingbo Ye (TX Bar No. 24124835)
Veritas Light Law Group, P.C.
2108 N ST STE N
Sacramento CA 95816
Tel: 832-462-0087
mingboye@veritaslightlaw.com

*Counsel for Defendants
Huicocy, xiangzhouwang, PERFACE,
ZJNUO Direct, SmileLED, Manbala,
pretty-angle, LiPang, and keebapoo*

**Certificate of Service**

I hereby certify that on November 21, 2025, I electronically filed the foregoing Defendants' Opposition to Plaintiff's Motion for Preliminary Injunction using the CM/ECF system, which will send notification of such filing to all counsel of record.

*/s/Mingbo Ye*
Mingbo Ye
